IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| **MANASSEH ROYDREGO SKINNER,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | CIVIL No: 1:14-CV-0174-WLS-TQL |
| **SHERIFF KEVIN SPROUL, et. al.,** | : | |
| | : | PROCEEDINGS UNDER 42 U.S.C. § 1983 |
| Defendants. | : | BEFORE THE U. S. MAGISTRATE JUDGE |

## ORDER AND RECOMMENDATION

Plaintiff Manasseh Roydrego Skinner, a pretrial detainee confined at the Dougherty County Jail in Albany, Georgia, filed a *pro se* civil rights complaint in this Court seeking relief under 42 U.S.C. § 1983.  He also seeks to proceed in this action without prepayment of the filing fee and has requested court-appointed counsel.

For those reasons stated herein, Plaintiff's Motion to Proceed *in forma pauperis* (Doc. 2) is **GRANTED**.  After conducting a preliminary review of Plaintiff's Complaint, the undersigned also finds that Plaintiff's allegations are sufficient to allow many of his Fourth and/or Fourteenth Amendment claims to go forward at this time for further factual development.  It is **RECOMMENDED**, however, that all other § 1983 claims, as discussed herein, be **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  It is also **RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction (Doc. 4) be **DENIED**.  His Motion for Appointment of Counsel (Doc. 3) is **DENIED**.

I.   **Motion to Proceed** *in forma pauperis*

Plaintiff's submissions show that he is currently unable to pre-pay the Court's $350.00 filing fee. His Motion to Proceed *in forma pauperis* (Doc. 2) is thus **GRANTED.**[1] See 28 U.S.C. § 1915(b). This does not mean that the filing fee is waived. Plaintiff is still obligated to pay the full balance of the filing fee using the payment plan described in § 1915(b) and ordered herein, see *infra* p.18. For this reason, the Clerk of Court is **DIRECTED** to send a copy of this Order to the warden or business manager of the facility in which Plaintiff is currently confined.

II.   **Motion for the Appointment of Counsel**

Plaintiff has also requested that counsel be appointed to assist him in this case. Under 28 U.S.C. § 1915(e)(1), the district court "may request an attorney to represent any person unable to afford counsel." However, there is "no absolute constitutional right to the appointment of counsel" in a § 1983 lawsuit. Poole v. Lambert, 819 F.2d 1025, 1028 (11th Cir. 1987). Appointment of counsel is a privilege that is justified only by exceptional circumstances. Lopez v. Reyes, 692 F.2d 15, 17 (5th Cir. 1982).

In this case, Plaintiff has filed a standard § 1983 *pro se* complaint. Under 28 U.S.C. § 1915A(a), the Court is required to review the Complaint to determine whether Plaintiff's allegations support a colorable legal claim. This process is routine in *pro se* prisoner actions and is thus not an "exceptional circumstance" justifying appointment of counsel. The facts stated in Plaintiff's Complaint are not complicated, and at this point, the law governing Plaintiff's claims is neither novel nor complex. Plaintiff's Motion (Doc. 3) is thus **DENIED**. However, if it later appears that counsel should be appointed in this case, the Court will entertain a renewed motion.

---

[1] A review of court records on the U.S. District Web PACER Docket Report reveals that Plaintiff currently has two strikes for the purposes of 28 U.S.C. § 1915(g). See Skinner v. Carter, 1:13-cv-0037 (M.D. Ga.) (dismissed pursuant to § 1915A) and Appeal No. 13-11312-E (11th Cir. 2013) (dismissed as frivolous).

**III.     Preliminary Screening of Plaintiff's Complaint**

      A.  Standard of Review

Because Plaintiff is a prisoner "seeking redress from a governmental entity or [an] officer or employee of a governmental entity," this Court is required to conduct a preliminary screening of his Complaint. See 28 U.S.C. § 1915A(a).  In so doing, the district court must accept all factual allegations in the complaint as true.  Brown v. Johnson, 387 F.3d 1344, 1347 (11th Cir. 2004).  *Pro se* pleadings, like the one in this case, are also "held to a less stringent standard than pleadings drafted by attorneys" and must be "liberally construed" by the court.  Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

A *pro se* pleading is, nonetheless, subject to dismissal prior to service if the court finds that the complaint, when construed liberally and viewed in the light most favorable to the plaintiff, fails to state a claim upon which relief may be granted. See 28 U.S.C. § 1915A(b)(1). A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  Thus, to state a cognizable claim, a plaintiff must allege sufficient facts to "raise the right to relief above the speculative level" and create "a reasonable expectation" that discovery will reveal the evidence necessary to prove a claim.  See id.  "Threadbare recitals of the elements of cause of action, supported by mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

      B.  Plaintiff's Claims

The present case arises out of an alleged use of excessive force at the Dougherty County Jail.  In his Complaint, Plaintiff alleges that he was taken from his cell on October 17, 2014, and

3

advised that a judge had issued an order requiring him to provide a sample of his DNA. Plaintiff refused to comply, citing his Fifth Amendment right against self-incrimination. The Complaint alleges that various officers – including Defendants Detective John Doe, Sergeant Hawkins, Investigator Dice, and Lt. Francois – nonetheless took the sample by force. Plaintiff was allegedly hit and strapped into a restraining chair. The officers then allegedly twisted Plaintiff's hands and wrists, grabbed and lifted Plaintiff's leg shackles (so that he was practically inverted), shoved his head against the chair, and then elbowed and choked him in an effort to force his compliance, while Nurse Williams took the sample. Plaintiff alleges that the sample was taken with such force that the nurse actually broke four swab sticks during the attempt and that he suffered multiple cuts on his gums and lips. According to the Complaint, several other officers and supervisors – including Defendants Major Lewis, Captain Collier, and Corporal Bryant – were present, but took no action to intervene. (Compl. at 7-8.)

After the sample was taken, Plaintiff was permitted to stand up, but he almost passed out. When he stumbled, Officers Cross, Owens, and Handle allegedly slammed him to the floor, causing the right side of his head to hit the ground. He was then pushed against the floor, kicked, and punched. The officers then cuffed and lifted Plaintiff to his feet. Although Plaintiff repeatedly stated that he felt as though he would "pass out," Major Lewis allegedly demanded that he walk and "bulldozed" Plaintiff, causing him to fall to the ground. Plaintiff was then lifted by his leg shackles and placed back in the restraining chair. Again, according to the Complaint, several other officers and supervisors – including Defendants Detective John Doe, Sergeant Hawkins, Investigator Dice, Officer Handle, Officer Cross, Corporal Wilson, Corporal Hunt, Corporal Bryant, Deputy Adams, and Deputy Goren (or Gloren) – were also present when this second assault occurred. (Id. at 8-9.)

4

Once Plaintiff was again strapped in the restraint chair, Nurse Lynn Montgerard was apparently summoned. She took Plaintiff's blood pressure, but, despite his complaints of pain, refused to provide him with any pain medication, to document his injuries, or to call him back to "medical" to see a physician as promised. Plaintiff was allegedly escorted back to his cell thereafter, where he "passed out" due to his "head injuries" and again hit his head on the floor. When he awoke, he (and other inmates on his behalf) requested, multiple times, that he be provided medical attention, but those requests were refused and ignored by Corporal Hunt. Officer Handle also allegedly told the dormitory officers "not to call medical" in response to Plaintiff's complaints. Plaintiff was thus forced to lay in his cell, "suffering in severe pain" for days without any treatment. (Id. at 9-10.) Plaintiff alleges that, as a result of Defendants' actions, he suffered head injuries ("knots" on his forehead); cuts on his mouth and lips; bruises and cuts on his neck; bruises and swelling on his shoulder, ribs, cheek, back, and chest; pain in his pelvis and right leg; and cuts, bruises, and swelling on his ankles. (Id. at 9, 14.)

Nurse Williams apparently saw Plaintiff the following day and also refused to provide Plaintiff medical treatment. When Plaintiff requested treatment and told her that he was in severe pain, she allegedly stated that she planned to tell officials that "she didn't see anything" and that by the time he got to medical all of the swelling would have gone down – so Plaintiff would have no evidence of the use of force. Plaintiff was taken for medical treatment days later, but was required by Major Haggerty to wear handcuffs while his injures were evaluated. (Id. at 10.)

Plaintiff claims that he filed several grievances with respect to these events and that the grievance officer, Corporal Bryant, refused to respond and thereby prevented him from exhausting his administrative remedies. (Id.) Plaintiff has thus now filed this civil rights action against more than twenty-two different named Defendants for alleged violations of the First,

Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. Plaintiff also brings a number of state law claims and has moved for an immediate injunction against Defendants. (Id. 10-15.)

> 1. *Fourth, Eighth, and Fourteenth Amendment Claims for Unreasonable Search and Seizure, Excessive Force, and Failure to Intervene*

According to the Complaint, Plaintiff has brought Fourth, Eighth, and Fourteenth Amendment claims against **Detective John Doe, Sergeant Hawkins, Investigator Dice, Lt. Francois, Nurse Williams, Officer Cross, Officer Owens, and Officer Handle,** presumably for their use of force in obtaining his DNA sample or thereafter. (Compl. at 11.) Plaintiff is also bringing claims against those officers allegedly present during these events who failed to intervene, **Major Lewis, Captain Collier, Corporal Wilson, Corporal Hunt, Corporal Bryant, Deputy Adams, and Deputy Goren (or Gloren)**. (Id.)

Plaintiff's allegations, when read in a light most favorable to Plaintiff, are sufficient to allow Fourth and Fourteenth Amendment claims against these Defendants to go forward at this time for further factual development. It is **RECOMMENDED**, however, that Plaintiff's Eighth Amendment claims against Defendants be **DISMISSED with prejudice**. At the time of this incident, Plaintiff was a pre-trial detainee and had not been convicted of any crime. Plaintiff's rights were thus provided by the Fourth and/or Fourteenth Amendments, rather than the Eighth Amendment. See Thomas v. Town of Davie, 847 F.2d 771, 772 (11th Cir. 1988) (citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S. Ct. 2979, 2983, 77 L.Ed.2d 605 (1983)).[2]

The undersigned notes that Plaintiff was unable to identify Detective "John Doe" by name, and as general rule, fictitious party pleading is not permitted in federal court. Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010). However, there is a difference between a claim

---

[2] This distinction is only academic. "[T]he standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." Marsh v. Butler County, Ala., 268 F.3d 1014, 1024 n. 5 (11th Cir. 2001) (en banc).

against fictitious parties and a claim against real parties sued under a fictitious name. See Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992). A claim against an unnamed defendant may proceed when the plaintiff's description of the defendant is sufficient for the party to be identified even though his actual name is unknown. See id. A claim may also proceed if it is otherwise clear, from the allegations in the complaint, that the plaintiff can easily uncover the defendant's name through discovery. See id; Bowens v. Superintendent of Miami South Beach Police Dept, No. 13–12372, 2014 WL 631146, at * 3 (11th Cir. Feb. 19, 2014).

The undersigned finds that the description of Detective John Doe from the "Albany Police Department Gang Task Force," in the context of Plaintiff's allegations, is sufficiently clear to allow the claims against this Defendant to go forward. Discovery will likely reveal the name of this party. Plaintiff has not, however, sufficiently identified the other "Unnamed Officers" listed as parties in his Complaint. It is thus **RECOMMENDED** that his claims against "Unnamed Officers" be **DISMISSED**.

Plaintiff has additionally failed to state any cognizable claim against Sheriff Kevin Sproul and Colonel Ostrander. In his Complaint, Plaintiff alleges that these Defendants should be held liable for his injuries because they failed to "train, supervise, and/or discipline" their subordinates and because the Doughtery County Jail has an alleged "custom, unwritten policy, and/or practice of using excessive force . . . against inmates and denying inmates medical treatment." (Compl. at 13.) These conclusory, self-serving allegations – unsupported by any objective allegation of fact – do not state a § 1983 claim. See Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) ("unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal"); Salas v. Tillman, 162 F. App'x 918, 922 (11th Cir. 2006) ("conclusory allegation that [w]arden . . . failed to properly train and supervise his staff was . . .

7

insufficient to set forth a claim under § 1983); Wright v. City of Ozark, 715 F.2d 1513, 1516 (11th Cir. 1983) ("failure to investigate an accident/incident, without more, does not violate any constitutional rights"). It is therefore **RECOMMENDED** that all claims against **Sheriff Sproul** and **Colonel Ostrander** also be **DISMISSED** for failure to state a claim.

*2. Fifth Amendment Claims*

Plaintiff's Complaint also purports to bring claims under the Fifth Amendment based on the alleged court-ordered taking of DNA evidence without his consent. (Compl. at 11.) Plaintiff's allegations, however, do not support a Fifth Amendment claim.

The Fifth Amendment "bars only compelling testimonial communications from an accused, not making the accused a source of physical evidence." Kaemmerling v. Lappin, 553 F.3d 669, 685-86 (D.C. Cir. 2008) (citing Schmerber v. California, 384 U.S. 757, 763–64, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). "[A] DNA sample is analogous to a photograph or fingerprint, another form of physical evidence identifying an individual that falls outside the scope of Fifth Amendment protection." See also, Wilson v. Collins, 517 F.3d 421, 431 (6th Cir. 2008); Kaemmerling, 553 F.3d at 686 ("A DNA sample is not a testimonial communication subject to the protections of the Fifth Amendment."); United States v. Reynard, 473 F.3d 1008, 1021 (9th Cir. 2007) (same); United States v. Hook, 471 F.3d 766, 773–74 (7th Cir. 2006) (same); Boling v. Romer, 101 F.3d 1336, 1340 (10th Cir. 1996) (same). It is therefore **RECOMMENDED** that Plaintiff's Fifth Amendment claims be **DISMISSED**.

*3. Sixth Amendment Claims*

Plaintiff also attempts to state Sixth Amendment claims against Lt. Francois, Detective John Doe, Sergeant Hawkins, and Investigator Dice because they allegedly denied Plaintiff his right to have counsel present when the DNA evidence was retrieved. (Compl. at 12.)

Plaintiff's Complaint, however, does not allege that he ever requested that counsel be present for the taking of a DNA sample. Moreover, even he had, a criminal defendant is not entitled to advice of counsel when asked to give evidence of a physical nature, such as his fingerprints or samples of saliva, blood, hair, or clothing. United States v. Wade, 388 U.S. 218, 226, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967); United States v. Lewis, 483 F.3d 871, 874 (8th Cir. 2007). It is thus **RECOMMENDED** that Plaintiff's Sixth Amendment claims also be **DISMISSED**.

*4. Fourteenth Amendment Denial of Medical Care Claims*

Plaintiff next contends that Officer Handle, Corporal Wilson, Corporal Hunt, Nurse Williams, and Nurse Montgerard violated his constitutional rights when they acted with deliberate indifference to his "serious medical needs." (Compl. at 12.) To state a § 1983 claim for inadequate medical care, a plaintiff must allege facts to show (1) that his medical need was objectively serious, and (2) that the defendant acted with deliberate indifference to his serious need. Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

Because Plaintiff alleges that Defendants ignored his requests for medical treatment despite knowing that Plaintiff suffered multiple injuries and was in "severe pain," the undersigned will allow claims against **Corporal Hunt, Officer Handle, Nurse Williams,** and **Nurse Montgerard** to go forward at this time for further factual development. The undersigned could not, on the other hand, find where Plaintiff alleged the specific circumstances under which Corporal Wilson denied him medical care; it is thus **RECOMMENDED** this claim against **Corporal Wilson** be **DISMISSED** for failure to state a claim.

*5. First Amendment Retaliation Claims*

Plaintiff next alleges that Major Haggerty and Lt. Montgerard both retaliated against him

9

in violation of his First Amendment rights. Plaintiff claims that Major Haggerty wanted to punish him for submitting grievances and for his objection to the DNA test and that he thus required that Plaintiff remain handcuffed during all future medical visits. Plaintiff similarly concludes that Lt. Montgerard filed retaliatory charges against him because he filed grievances against Nurse Lynn Montgerard. (Compl. at 10, 12-13.)

It is well-settled that a prison official may not retaliate against an inmate for engaging in conduct protected by the First Amendment. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). The courts, however, also recognize the inevitability that prisoners will take exception to acts by prison officials and "the ease with which claims of retaliation may be fabricated." Colon v. Coughlin, 58 F.3d 865, 872 (2nd Cir 1995). Prisoner claims of retaliation are thus examined "with skepticism and particular care." Id. To state a retaliation claim, a prisoner must "come forward with more than 'general attacks'" on a prison official's motivations. Robinson v. Boyd, No. 5:03CV25/MMP/MD, 2005 WL 1278136 at *3 (N.D. Fla. May 26, 2005) (citing Crawford-El v. Britton, 523 U.S. 574, 118 S. Ct. 1584, 1598, 140 L.Ed.2d 750 (1998)). The complaint must allege facts suggesting an actual causal connection between his protected conduct and the prison official's alleged retaliatory action. Farrow, 320 F.3d at 1248. See also, Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).

In this case, Plaintiff fails to allege the required causal connection. Plaintiff only makes general attacks on the prison officials' motivations and comes to a self-serving conclusion that their motives were retaliatory. Plaintiff has thus failed to allege sufficient facts to state a retaliation claim, and it is **RECOMMENDED** that these claims be **DISMISSED**.

      6. *Fourteenth Amendment Equal Protection Claim*

In his Complaint, Plaintiff alternatively claims that Major Haggerty violated his right to

equal protection when he ordered that Plaintiff remain handcuffed during his subsequent visit to "medical." Plaintiff states that other inmates who had actually assaulted officers (when he had not) were not subjected to the same restriction. (Compl. at 10.)

Because Plaintiff does not allege any fact suggesting that he has received disparate treatment because of a constitutionally protected interest, such as race, gender, or religion, the undersigned assumes that he has attempted to state a "class of one" equal protection claim. See Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir.) cert. denied, 549 U.S. 1020, 127 S.Ct. 559, 166 L.Ed.2d 410 (2006). "The Supreme Court has recognized the Equal Protection Clause is implicated in 'class of one' claims 'where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Id. (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L.Ed.2d 1060 (2000)). A showing that other inmates were similarly situated requires some specificity, however. See Campbell, 434 F.3d at 1314. "To be considered 'similarly situated,' comparators must be *prima facie* identical in all relevant respects." Id.

Thus, Plaintiff's allegations in this case – that other inmates, who have (in his opinion) committed more violent offenses were not also required to wear handcuffs during medical examinations – do not support an equal protection claim. "It is not enough for Plaintiff to make a conclusory assertion that other persons were treated better." Cladek v. Pagano, No. 4:14cv187, 2014 WL 4693120, at *1 (N.D. Fla. Sept. 22, 2014). Plaintiff "must attempt to show in some fashion that these "other [inmates] were situated similarly." GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1367–68 (11th Cir. 1998). Plaintiff's Complaint does not include any such allegations. It is therefore **RECOMMENDED** that his equal protection claim be **DISMISSED**.

### 7. *Conspiracy Claims*

Plaintiff additionally brings claims against Major Haggerty, Lance Montgerard, Nurse Montgerard, Corporal Hunt, Officer Handle, Nurse Williams, Corporal Wilson and Lt. Francois for "conspiracy to conceal" the incident that occurred on October 17, 2014, denying him medical treatment, and filing a false disciplinary report. (Compl. at 12-13.)

Allegations of conspiracy, however, "must be specific and based upon facts rather than conclusions." Van Bethel v. Carter, No. 5:12–cv–01153–RDP–HGD, 2012 WL 5932682 at *2, (N.D. Ala. Oct. 12, 2012). "It is not enough to simply aver in the complaint that a conspiracy existed." Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984). To state a conspiracy claim under § 1983, a plaintiff must (1) show that the defendants had a "meeting of the minds" or reached an understanding to violate his rights and (2) prove an actionable wrong to support the conspiracy. Bailey v. Bd of Cnty Comm'rs of Alachua Cnty, Fla., 956 F.2d 1112, 1122 (11th Cir. 1992). "[T]he linchpin for conspiracy is agreement, which presupposes communication." Id.

Plaintiff's Complaint does not offer any specifics as to when or how an agreement among these Defendants may have been reached. Plaintiff's self-serving, conclusory statements that Defendants conspired against him are simply not enough to state a claim. See Fullman, 739 F.2d at 556–57 ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy."). It is thus **RECOMMENDED** that Plaintiff's conspiracy claims be **DISMISSED**.

### 8. *State Law Claims*

In addition to his § 1983 claims, Plaintiff has attempted to assert a number of state law claims. (Compl. at 11-12.) Although the undersigned has determined that some of Plaintiff's related § 1983 claims should survive initial screening, it is possible that such claims may fail if

faced with a motion to dismiss. In the event that the federal claims over which this Court has original jurisdiction are dismissed, the Court will likely decline to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3). Therefore, as federal jurisdiction over Plaintiff's state law claims remains an unsettled issue, the undersigned will decline to consider the merits of such claims at this early stage of the case.

### IV. Motion for Preliminary Injunction

In his Complaint, and through a separate motion (Doc. 4), Plaintiff further requests that the Court enter an immediate order (1) suppressing the DNA evidence taken on October 17, 2014; (2) ordering Defendants not to retaliate against Plaintiff for exercise of his First Amendment rights; (3) preventing Major Haggerty from forcing Plaintiff to remain in handcuffs during medical examinations; and (4) barring Defendants from using excessive force or interfering with Plaintiff's medical treatment. Plaintiff also seeks injunctive relief entirely unrelated to the claims raised in this case: i.e., an order preventing Defendants from interfering with "his medical profiles," his recreation and shower time, and his legal mail.

As Plaintiff is aware, the district court may not issue an injunction unless certain specific criteria are met. Among other things, the movant must show that there is a substantial likelihood of success on the merits of his claim and that an irreparable injury will be suffered unless the injunction issues. McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998). In this instance, Plaintiff's Motion merely repeats conclusory allegations made in the Complaint and states that his claims are "undisputed." Plaintiff's claims at this time are of course undisputed, but only because Defendants have not yet been served. His allegations thus fall well-short of meeting the prerequisites for the issuance of a preliminary injunction.

At this stage in the litigation, Plaintiff has yet to identify any objective evidence that the

actions about which he complains violated his constitutional rights. Plaintiff's motion is based solely on Defendants' alleged past behavior and his own speculation about a threat of future injury. "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if [he] alleges, and ultimately proves, a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury." Williams v. Bd. of Reg. of the Univ. Sys. of Ga., 477 F.3d 1282, 1302 -1303 (11th Cir. 2007). The district court also cannot issue a general injunction barring Defendants from violating the law. See SEC v. Smyth, 420 F.3d 1225, 1233 (11th Cir. 2005). It is already unlawful for officials to retaliate against a prisoner, use excessive force, or deny medical treatment for a serious medical need.

Plaintiff likewise fails to sufficiently describe how he will suffer an *irreparable* injury unless the injunction issues. Id. Plaintiff in fact articulates no harm caused by the requirement that he remain in handcuffs during medical visits. Plaintiff's criminal prosecution is also still ongoing; and thus his constitutional claims related to the admissibility of evidence can be adequately addressed in his state criminal case.

It is therefore **RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction (Doc. 4) be **DENIED**.

V. Conclusion

For those reasons stated herein, Plaintiff's Motion to Proceed *in forma pauperis* (Doc. 2) is **GRANTED**, and his Motion the Appointment of Counsel is **DENIED**. Furthermore, after liberally construing Plaintiff's Complaint and viewing all factual allegations in his favor, the undersigned will allow claims against **Detective John Doe, Sergeant Hawkins, Investigator Dice, Lt. Francois, Nurse Williams, Officer Cross, Officer Owens, Officer Handle**, **Major Lewis, Captain Collier, Corporal Wilson, Corporal Hunt, Corporal Bryant, Deputy**

**Adams, Deputy Goren (or Gloren)**, **and Nurse Montgerard** to go forward for further factual development.[3] It is thus **ORDERED** that service be made on these Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and the possible imposition of expenses for failure to waive service pursuant to Rule 4.

It is **RECOMMENDED** that all other § 1983 claims, as discussed herein, be **DISMISSED** for failure to state a claim. See 28 U.S.C. § 1915A(b)(1). It is also **RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction (Doc. 4) be **DENIED**. Plaintiff may serve and file written objections to these recommendations with the district judge to whom this case is assigned within fourteen days after being served a copy of this Order.

## DUTY TO ADVISE OF ADDRESS CHANGE

During this action, all parties shall at all times keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are advised that they are expected to diligently defend all allegations made against

---

[3] The undersigned of course recognizes that the matters raised in many of Plaintiff's claims going forward may require a finding which could substantially interfere with, and potentially undermine, the results reached in Plaintiff's ongoing state criminal proceedings. The Court may thus be required to abstain from hearing some or all of Plaintiff's claims until the conclusion of his criminal case. See Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed.2d 669 (1971). This issue, however, will not be decided on preliminary review. Defendants may argue this issue on motion.

them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

### FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

### DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the FEDERAL RULES OF CIVIL PROCEDURE. Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with his custodian. Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.

16

**IT IS HEREBY ORDERED** that discovery (including depositions and the service of written discovery) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective order is sought by Defendants and granted by the Court.  This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first).  The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party.  The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules may not exceed FIFTEEN (15) requests to each party.  No party is required to respond to any request which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in no event later than one hundred twenty (120) days after the beginning of the discovery period,

unless otherwise directed.

### DIRECTIONS TO CUSTODIAN OF PLAINTIFF

Following the payment of the required initial partial filing fee or the waiving of the payment of same, the Warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the Prison Litigation Reform Act, Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.

**IT IS ORDERED AND DIRECTED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

### PLAINTIFF'S OBLIGATION TO PAY FILING FEE

Pursuant to provisions of the Prison Litigation Reform Act, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full; Plaintiff shall continue to remit monthly payments as required by the Prison Litigation Reform Act. Collection from Plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event Plaintiff is released from custody and fails to remit payments. In addition, Plaintiff's Complaint is subject to dismissal if he has the ability to make monthly payments and fails to do so.

**SO ORDERED,** this 1st day of December, 2014.

                                          s/***THOMAS Q. LANGSTAFF***
                                          UNITED STATES MAGISTRATE JUDGE

jlr