**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

MANASSEH ROYDREGO SKINNER,   :
                                   :
           Plaintiff,      :
v.                             :   CASE NO. 1:14-CV-174-WLS-MSH
                                   :
KEVIN SPROUL, *et al.*,        :
                                   :
           Defendants.    :
_____

## <u>ORDER AND</u>
## <u>REPORT AND RECOMMENDATION</u>

Presently pending before the Court are Defendants' various motions for summary judgment (ECF Nos. 49, 63, 67, 98), and Plaintiff's motions to strike (ECF Nos. 52, 90), motions to supplement (ECF Nos. 78, 79, 101), motion to dismiss Defendant Christian (ECF No. 61), and motions for and entry of default and default judgment against Defendant Watisha Williams (ECF Nos. 88, 96, 97).  For the reasons explained below, Plaintiff's motions to strike are denied, his motions to supplement are granted except for his most recently filed motion to supplement, his motion to dismiss is terminated and Defendant Christian is dismissed, and his third motion for default is granted and the clerk is directed to issue an entry of default against Watisha Williams.  Furthermore, it is recommended that Defendants' motions for summary judgment be granted.

## BACKGROUND

This case arises out of an alleged use of excessive force during the execution of a warrant at Dougherty County Jail.  Plaintiff makes the following allegations in his

Amended Complaint: On October 17, 2014, Plaintiff, a pretrial detainee, was told he was going to Court in order to "lure [him] out of the dormitory to medical so Defendants could take [his] DNA[.]" Am. Compl. 3, ECF No. 57. The Sheriff's Office Defendants[1] and Albany Police Defendants[2] were present when Plaintiff was taken to medical. *Id.* The week prior to this, Plaintiff informed the Albany Police Defendants that he would need to speak to his attorney before any evidence would be taken from him. *Id.* Plaintiff also declined to sign a consent form to have his DNA taken. *Id.*

When Plaintiff entered a room in medical, Defendant Roberts asked Plaintiff to sit down in the "restraint chair." Am. Compl. 3-4. Plaintiff complied. *Id.* at 4. A defendant then told Plaintiff that he had "a warrant from the judge" for Plaintiff's DNA "through swabbing [Plaintiff's] mouth." *Id.* Plaintiff refused to consent to the swabbing. *Id.* Nurse Watisha Williams was then brought into the room. She identified herself and asked Plaintiff to allow her to swab his mouth. Plaintiff again refused. *Id.* Plaintiff then "stood up and told Lt. [Le]Francois . . . that I would like to go back to my cell because my 5th Amendment protected me from given [sic] evidence against myself." Am. Compl. 4. Defendant LeFrancois told Plaintiff that he was "not going anywhere until they got what they came for." *Id.*

Defendant Roberts "then reached for [Plaintiff's] left hand[,] which [Plaintiff] withdrew from him." *Id.* Defendant Roberts then hit Plaintiff in the forehead with his

---

[1] Defendants who are employees of the Dougherty County Sheriff—Defendants Lewis, Collier, Handley, LeFrancois, Owens, Cross, Wilson, Hunt, Bryant, Cruz, Goree, and Stone—are hereinafter collectively referred to as the "Sheriff's Office Defendants."
[2] Defendants Roberts, Hawkins, Dice, and Griffin are employees of the Albany Police Department and are hereinafter collectively referred to as the "Albany Police Defendants."

"left elbow" causing Plaintiff to fall back into the chair.  *Id.*  Defendant Dice grabbed Plaintiff's "right injured hand" and twisted that hand and fingers "causing [Plaintiff] to suffer pain[.]"  Am. Compl. 4.  Defendant LeFrancois pulled up on Plaintiff's leg shackles causing Plaintiff to be "almost upside down" in the restraining chair."  *Id.*  Defendant Roberts shoved Plaintiff's head into the chair.  *Id.*  Plaintiff then "tried to rise up" because "of the pain and [dis]comfort," but was again restrained by Defendant Roberts with his elbow above Plaintiff's eye.  Defendant Hawkins also "placed his hand on [Plaintiff's] neck and applied pressure and told nurse W. Williams to swab [Plaintiff.]"  *Id.*

Nurse W. Williams then attempted to swab Plaintiff's mouth.  Plaintiff kept his mouth closed and the swab sticks broke against Plaintiff's gums "producing blood in [Plaintiff's] mouth and cuts on [Plaintiff's] lips."  Am. Compl. 4.  Defendant Hawkins applied pressure to Plaintiff's throat, which caused Plaintiff to open his mouth.  *Id.*  Nurse W. Williams used six swabs in her attempts to procure a sample.  *Id.*  Defendants then released Plaintiff in the restraint chair and he attempted to stand.  *Id.*  Plaintiff "stumbled by Lt. [Le]Francois due to almost passen [sic] out when he grabbed my jumpsuit and several other officers . . . began trying to slam me to the ground[.]"  *Id.*  Plaintiff hit the right side of his head and Defendants Handley and Cross cuffed Plaintiff despite Plaintiff's "profile for left and right hand injuries."  Am. Compl. 5.

Defendant Owens then "shoved" Plaintiff out the door.  *Id.*  Plaintiff walked a short way down the hall escorted by Defendants Christian and Handley and then stopped and said he "feel like I'm fina [sic] pass out."  *Id.*  Defendant Owens told Plaintiff that he

"better walk[.]"  *Id.*   When Plaintiff did not continue to walk, Defendant Owens "bulldozed into [Plaintiff] and Officer Handle[y] from the back slamming [them] to the ground[.]"  *Id.*  Defendant Collier ordered Defendant Owens to stop and asked Plaintiff if he could walk.  Plaintiff stated that he could walk, but that he needed to see medical.  *Id.*  Two officers then began walking him out and when Plaintiff "passed out again[,]" Lt. LeFrancois ordered that Plaintiff be put back into the restraint chair.  Am. Compl. 5.

Nurse Lynn Montgerard came into medical and began examining Plaintiff by taking his blood pressure.  *Id.*  She refused to give Plaintiff any pain medication and said that she would "call [Plaintiff] back to medical to see the physician later[.]"  *Id.*  Plaintiff claims that he was then returned to his cell where he passed out.  *Id.* at 5-6.  Plaintiff asked another inmate to call medical.  Officer Bell then "informed Corporal Hunt, [but] Corporal Hunt refused to call medical regarding [Plaintiff's condition] leaving [Plaintiff] to suffer severe pain."  *Id.* at 6.[3]  Officer Bell called medical but medical "refused to see [Plaintiff]."  *Id.*  Plaintiff avers that he remained in his cell for two days, during which he passed out again, and that Corporal Hunt refused to inform medical that he needed to be seen or that he was in severe pain.  Am. Compl. 6.  Similarly, Plaintiff states that Defendant Handley told multiple other officers in the jail not to call medical for Plaintiff. *Id.*

On October 18, 2014, Plaintiff "informed" Defendant Nurse D. Williams that he "was in severe pain and needed to see medical[,]" but she told Plaintiff that she was

---

[3] It is unclear from Plaintiff's Amended Complaint and later filed affidavits if the "other inmate" asked Officer Bell to call medical.  It is equally unclear how Plaintiff has personal knowledge of some of these alleged facts.

going to say she "didn't see anything." *Id.* The following day, Plaintiff spoke to Defendant D. Williams again and told her that he was going to file a grievance against her. *Id.* He states that he reported to sick call and saw the physician "about 4 days after this incident occurred" and was forced to wear handcuffs in violation of his rights. *Id.*

After a preliminary review of his Complaint and amended complaints, the following claims were allowed to proceed: (1) Fourth and Fourteenth Amendment claims against Charlie Roberts (formerly John Doe), Sergeant Hawkins, Investigator Dice, Lt. LeFrancois, Nurse Watisha Williams, Officer Cross, Officer Owens, and Officer Handle for excessive force while obtaining Plaintiff's DNA; (3) Fourth and Fourteenth Amendment claims for failure to protect or intervene against Tyrone Griffin, Major Lewis, Captain Collier, Corporal Wilson, Corporal Hunt, Corporal Bryant, Deputy Cruz (formerly Adams), Deputy Goree (identified as "Goren" in the Amended Complaint), Officer Christian, and Officer Stone; (4) Fourteenth Amendment claim against Nurse Montgerard, Nurse D. Williams, Corporal Hunt, and Officer Handle for deliberate indifference to his serious medical needs; and (5) due process claim against Defendants Charlie Roberts, Sergeant Hawkins, Investigator Dice, Lt. LeFrancois, Nurse W. Williams for taking his DNA through excessive force. Plaintiff also asserts state law claims for gross negligence, assault/battery, and intentional infliction of emotional distress. Defendants move for summary judgment on each of these claims except for Defendant Watisha Williams who has failed to answer or otherwise respond to Plaintiff's complaint. These motions are ripe for review along with several motions filed by Plaintiff.

**DISCUSSION**

## I.    Motions to Strike

Plaintiff moves to strike several affidavits attached to Defendants' motions for summary judgment (ECF Nos. 52, 90.)   Specifically, Plaintiff claims that portions of affidavits by Corporal Vivian Hunt, Corporal Thomas Bryant, Officer Handley, Deputy Goree, Officer Owens, Officer Cross, Lieutenant LeFrancois, Corporal Wilson, Deputy Cruz, Major Lewis, and PA Will Oder must be struck from the record.   Pl.'s Mot. to Strike 1-10, ECF No. 52; Pl.'s Second Mot. to Strike 2-3, ECF No. 90.   Plaintiff generally contends that portions of these affidavits are not based on personal knowledge, contain conclusions of law instead of facts, and conflict with other evidence in the record. Pl.'s Mot. to Strike 1-2; Pl.'s Second Mot. to Strike 1-2; *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated."); *United States v. Spellissy*, 374 F. App'x 898, 900 (11th Cir. 2010) ("An affidavit that contains no admissible evidence may be excluded.").

Plaintiff's assertions are unsupported by the record and Plaintiff's motions (ECF Nos. 52, 90) are denied.   Furthermore, even if portions of Defendants' affidavits are inadmissible, the Court is able to sift through those affidavits and determine which portions are factual statements that may be used in opposition to the motion for summary judgment. *See, e.g., Roswell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, we may consider only that evidence which can be

reduced to an admissible form."). To the extent that any of Defendants' or Plaintiff's affidavits contains conclusory statements or is otherwise inadmissible, the Court will not consider such statements to support the motion for summary judgment.

## II.    Requests for Entry of Default

Plaintiff filed a Declaration for Entry of Default (ECF No. 88) against Defendant Watisha Williams on September 3, 2015. Therein, Plaintiff avers that Defendant Watisha Williams "failed to answer or otherwise defend" against Plaintiff's complaint. Decl. for Entry of Default 1, ECF No. 88. At that time, a waiver of service had not been returned as to Watisha Williams. Consequently, on September 8, 2015, the clerk issued a USM 285 Process Receipt and Return for personal service as to Watisha Williams.[4] (ECF No. 91.) The USM 285 for personal service was returned as executed on September 11, 2015. (ECF No. 92.) Defendant Watisha Williams has not answered or otherwise responded to Plaintiff's complaint despite having been personally served.

On October 8, 2015, the Court received a second request from Plaintiff for a clerk's entry of default. (ECF No. 96.) This second request was docketed as a motion for default judgment, but is actually a request for the clerk's entry of default. Plaintiff filed another Declaration for Entry of Default on November 4, 2015. (ECF No. 97.) This final request for entry of default was properly filed more than thirty days after Defendant Watisha Williams was personally served on September 11, 2015.

---

[4] The Court notes that the clerk contacted Defendant Watisha Williams on September 8, 2015, and was advised that she received the initial summons packet and gave the packet to the attorneys for Lily Pad, her employer. *See* Text Docket Entry, ECF No. 91, Sept. 8, 2015.

Rule 55 of the Federal Rules of Civil Procedure provides that a clerk "must enter [a] party's default" when that party "failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Federal Rules of Civil Procedure Rule 4 covers the issue of service.  Rule 4(d) states that when a waiver of service is requested, as was in this case, a defendant must be given "a reasonable time of at least 30 days after the request was sent" to return the waiver. Fed. R. Civ. P. 4(d)(1)(F).  Additionally, if a defendant files a waiver, he has "60 days after the request was sent" to file an answer or responsive pleading to the complaint. Fed. R. Civ. P. 4(d)(3).

Defendant Watisha Williams has not filed a waiver, answer, or other responsive pleading.  Plaintiff's request for a clerk's entry of default is consequently granted.[5] However, the Court cannot allow some of Plaintiff's claims against Defendant Williams to proceed.  Specifically, as explained in detail below, there is no Fourth Amendment violation in this case because the search warrant[6] for Plaintiff's DNA is supported by probable cause.  The Court will not create internally inconsistent rulings by allowing a Fourth Amendment claim against Defendant Williams to proceed.  Additionally, Plaintiff has failed to state a claim for a due process violation against Defendant Williams.  It is consequently recommended that these claims be dismissed, but that Plaintiff's claim for excessive force be allowed to proceed.

---

[5] Plaintiff has not moved for default judgment.  His request for a clerk's entry of default, docketed as a motion for default judgment (ECF No. 96), is thus terminated.
[6] The search warrant is mentioned in Plaintiff's Complaint and Amended Complaint and the Court considers it to be incorporated by reference.

The clerk is directed to enter default against Defendant Watisha Williams as to Plaintiff's claim for excessive force and state law claims of gross negligence, assault and battery, and intentional infliction of emotional distress.  A copy of this Order shall be personally served on Defendant Watisha Williams by the United States Marshal's Service.

## III.   Motion to Dismiss

Plaintiff moved on July 9, 2015 to voluntarily dismiss Officer Christian (ECF No. 61).  He renewed this request in response to Defendant Christian's motion for summary judgment.  Pl.'s Mem. in Opp'n to Def. Christian & Stone's MSJ 2, ECF No. 100-1.  Defendant Christian did not file an answer to the amended complaint until September 1, 2015.  (ECF No. 86.)  Consequently, Plaintiff's request is a voluntary dismissal by the Plaintiff pursuant to Federal Rule of Civil Procedure 41(a)(1)(A) and does not require a court order.  Plaintiff's motion to dismiss is terminated and the clerk is directed to terminate Officer Christian as a defendant.

## IV.   Motions to Supplement

Plaintiff moves for leave to supplement his briefs in response to Defendants' motions for summary judgment.  (ECF Nos. 78, 79, 101.)  His first two motions to supplement are granted and the Court will consider the information therein in ruling on Defendants' motions for summary judgment.  On November 17, 2015, Plaintiff again moved to supplement his responses to Defendants' motions for summary judgment stating that he has "recently received/discovered relevant case law[.]"  Mot. to Suppl. 1, ECF No. 101.  Plaintiff has thoroughly litigated his case and filed multiple responses,

including surreplies without leave of court, which the Court has considered.  Additional supplementation would further convolute this already complicated and adequately litigated case.  Plaintiff's final motion to supplement is consequently denied.

## V.   Motions for Summary Judgment

Plaintiff claims that various constitutional rights were violated when Defendants: (1) took a sample of his DNA over his objections; (2) used excessive force to take that sample; (3) failed to intervene to stop the use of excessive force; and/or (4) denied medical care after the use of force.  Plaintiff also asserts state law claims of gross negligence, assault/battery, and intentional infliction of emotional distress.  Defendants claim that they are entitled to summary judgment on these claims in their individual and official capacities.

### A.   Standard of Review

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

B.    Official Capacity Claims

1.    *Sheriff's Office Defendants*

Defendants claim that they are entitled to summary judgment on the claims against them in their official capacities.  Specifically, the Sheriff's Office Defendants argue that Eleventh Amendment immunity protects them from suit regarding the claims for taking the DNA sample and excessive force.  "The Eleventh Amendment protects a State from being sued in federal court without the State's consent."  *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted).  "As such, it is no different from a suit against the State itself," *id.*, which fails because of Eleventh Amendment immunity.  *See, e.g., Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1301 (11th Cir. 2007) ("Under most circumstances, the Eleventh Amendment bars suits against states and state entities by their citizens.").

The Sheriff's Office Defendants are employees of the sheriff.  "[A]uthority and duty [of the sheriff] to administer the jail in his jurisdiction flows from the State, not the County."  *Purcell ex rel Estate of Morgan v. Toombs Cty.,* 400 F.3d 1313, 1325 (11th Cir. 2005) (internal quotation marks and citation omitted); *see also Manders v. Lee*, 338 F.3d 1304, 1308-12, 1315-18, 1328-29 (11th Cir. 2003).  The same rationale that applies to the sheriff applies to sheriff's deputies and officers operating in their official capacities in running and administering the jail.  *Scruggs v. Lee*, 256 F. App'x 229, 232 (11th Cir. 2007).  Therefore, Eleventh Amendment immunity bars suits for damages against the

Sheriff's Office Defendants in their official capacities for the claims of taking the DNA sample and using excessive force and summary judgment should be granted in their favor.

Plaintiff contends that for deliberate indifference to medical needs claims, a sheriff's office employee derives his or her authority from the city or county and not from the State. The Sheriff's Office Defendants admit that the law is less settled concerning claims for denial of medical care and whether a sheriff's authority comes from the State. Br. in Supp. of Sheriff's Office Defs.' MSJ 15-17, ECF No. 49-2. Regardless, the Sheriff's Office Defendants contend that Plaintiff has failed to establish that Dougherty County has a policy, custom, or practice that caused Plaintiff's constitutional deprivation. *Id.* at 15.

A municipality "may not be held liable for constitutional deprivations on the theory of *respondeat superior*." *Hill v. Cundiff*, 797 F.3d 948, 977 (11th Cir. 2015). "Instead, to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). The plaintiff must identify the policy or custom that caused his injury, and such policy or custom must be "a persistent and wide-spread practice." *Id.* at 1290. Furthermore, if identifying a custom, it must be "a practice that is so settled and permanent that it takes on the force of law." *Id.*

Plaintiff states in his Complaint that "Dougherty Co. Jail officers have a custom, unwritten policy, and/or practice of using excessive force against inmates and denying them medical attention." Compl. 11, 13. He further alleges in his Amended Complaint that the "medical staff, in an attempt to cover these officers unlawful actions against me up (as is a custom in DCJF) refused to see me," Am. Compl. 6, ECF No. 57, and that certain officers on certain shifts at Dougherty County Jail have "a custom, practice and unwritten policy for using force that's excessive against inmates and denying them medical treatment as they've done me[] and others in my dormitory." Am. Compl. 7; *see also* Am. Compl. 9-10. As previously explained by the Court, these types of "conclusory, self-serving allegations—unsupported by any objective allegation of fact— do not state a § 1983 claim." Order & R. & R. 7, ECF No. 7 (citing *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

Plaintiff's only "evidence" in support of a policy or custom of denying medical care at Dougherty County Jail is that he personally was denied medical care by two Defendants—Hunt and Handley—over the course of several days regarding treatment for the alleged injuries from taking his DNA. Pl.'s Opp'n to Sheriff's Office Defs.' MSJ 22, ECF No. 53-1. He argues that this shows that there is a "widespread" practice of being deliberately indifferent to inmates' medical needs. Plaintiff further states that "Defendants have no policy concerning Buccal Swabs[.]" *Id.* These allegations, which concern the actions of only two individual officers, are insufficient to show that there is a policy or custom of deliberate indifference. *See, e.g., Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1329-30 (11th Cir. 2015) (affirming dismissal of

municipal claim where plaintiff failed to sufficiently allege that sheriff's office had policy or custom).  The Sheriff's Office Defendants are thus entitled to summary judgment on their official capacity claims.

Plaintiff also contends that the Eleventh Amendment does not bar his request for injunctive relief against the Sheriff's Office Defendants.  Pl.'s Br. in Opp'n to Sheriff's Office Defs.' MSJ 20.  "In *Ex parte Young*, [209 U.S. 123 (1908),] the Supreme Court carved out a narrow exception to the States' sovereign immunity when it held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law."  *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1308 (11th Cir. 2011) (internal quotation marks and citation omitted).  This exception does not apply "to claims for retrospective relief."  *Green v. Mansour*, 474 U.S. 64, 68 (1985).

In his Complaint, Plaintiff requests injunctive relief "ordering Defendants not to retaliate, destroy all illegal obtain DNA and lift restraint to punish me concerning handcuffs in medical and not to bring false charges against me[.]"  Compl. 15; *see also* Am. Compl. 12.  Plaintiff is therefore requesting the type of prospective injunctive relief to which the narrow *Ex parte Young* exception may apply.  However, as is explained in more detail below, it is recommended that Defendants' motions for summary judgment be granted because no constitutional violation has occurred.  There is thus no continuing violation of federal law for which Plaintiff would be entitled to an injunction and the *Ex parte Young* exception does not apply.  The Sheriff's Office Defendants' motions for summary judgment for the claims in their official capacities should be granted.

14

2.    *Albany Police Defendants*

The Albany Police Defendants likewise move for summary judgment on the claims against them in their official capacities.  A suit against these officers in their official capacities is a suit against the municipality they represent.  *See, e.g., Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("[S]uits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent[.]"); *Horne v. Soc. Sec. Admin.*, 359 F. App'x 138, 144-45 (11th Cir. 2010) ("Where an officer is sued under § 1983 in his official capacity, the suit is actually a proceeding against the municipality the officer represents.").  As explained above, § 1983 liability arises against a municipality only if a plaintiff can show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."  *McDowell*, 392 F.3d at 1289.

Plaintiff claims that the Albany Police Department has a policy of using "excessive force against pretrial detainees to illegally obtain DNA/evidence to use in a criminal case[.]"  Pl.'s Mem. in Opp'n to Albany Police Defs.' MSJ 15, ECF No. 76-1. In support, Plaintiff points to a letter from the District Attorney's Office in Dougherty County to Plaintiff's criminal attorney.  *Id.* at 15-16.  This letter provides Plaintiff's attorney with notice that the Albany Police Department "secured a search warrant to obtain buccal swabs from [Plaintiff]" in an underlying criminal case.  Albany Police Defs.' MSJ Ex. E, ECF No. 67 at 20.  Plaintiff's attorney is notified of the time and place for the buccal swab collection as a courtesy so that he may attend.  *Id.*

15

There can be no inference drawn from this letter that Dougherty County, Albany, or the Albany Police Department has a policy or custom of using excessive force to illegally obtain DNA or other evidence.  The letter fails to mention force at all.  It merely provides notice to Plaintiff's criminal attorney that a search warrant has been secured for the collection of DNA.  Since Plaintiff has failed to present any evidence to show a policy of illegally taking DNA samples through the use of excessive force, the Albany Police Defendants are entitled to summary judgment in their official capacities.  *See, e.g., Casey v. City of Hialeah*, 316 F. App'x 964, 964-65 (11th Cir. 2009) (affirming summary judgment where Plaintiff "has not presented any evidence whatsoever that the City [] had any policy in place which authorized excessive force[]").

C.    Individual Capacity Claims

Defendants argue that they are also entitled to summary judgment for the claims against them in their individual capacities.  Specifically, each Defendant claims that Plaintiff failed to establish a constitutional violation such that he or she is either entitled to judgment as a matter of law or qualified immunity.[7]  Those Defendants claiming they are entitled to qualified immunity also claim that their conduct did not violate any clearly established right.

---

[7] Defendants Nurse Montgerard and Nurse D. Williams do not assert a defense of qualified immunity presumably because they are employees of a private entity that contracts with the State to provide medical services at Dougherty County Jail.  Montgerard Aff. ¶¶ 3-4, ECF No. 63-2 at 79; D. Williams Aff. ¶¶ 3-4, ECF No. 63-2 at 98; *see also Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).  The Nurse Defendants also fail to address whether Plaintiff can assert official capacity claims against them.  As explained in detail below, however, Plaintiff has not established a constitutional violation by either Nurse Defendant, and they are entitled to summary judgment.  Such finding likewise precludes a claim against these Defendants in their official capacities.

*1.     Standard for Qualified Immunity*

"Qualified immunity protects government officials performing discretionary duties from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Anderson v. City of Naples*, 501 F. App'x 910, 915-16 (11th Cir. 2012) (internal quotation marks and citation omitted).  "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating federal law." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks and citation omitted).

"In order to receive qualified immunity, an official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred." *Id.*  Once the defendant shows that he was acting within his discretionary authority, the burden then shifts to the plaintiff to establish that qualified immunity does not apply.  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2004).  "[D]iscretionary authority [] include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994).

The Sheriff's Office Defendants and the Albany Police Defendants assert that they were acting within their discretionary authority in executing a warrant, taking Plaintiff's DNA, and providing medical care to Plaintiff.  Plaintiff does not dispute that these Defendants, except Defendant Stone, were acting within the scope of their discretionary

authority.  Pl.'s Br. in Opp'n to Sheriff's Office Defs.' MSJ 22-23; Pl.'s Mem. in Opp'n to Albany Police Defs.' MSJ 16-17.  Plaintiff states in response to Defendant Stone's motion for summary judgment that Defendant Stone acted outside his discretionary authority when he "chose to use excessive force against the Plaintiff and/or failed to intervene when excessive force was being used against Plaintiff."  Pl.'s Mem. in Opp'n to Def. Stone's MSJ 8, ECF No. 100-1.  Plaintiff's argument does not go to whether Defendant Stone was acting within his discretionary authority, but merely restates that Plaintiff believes Defendant Stone violated Plaintiff's constitutional rights.

For purposes of the qualified immunity analysis, the court does not "focus[] on whether the acts in question involved the exercise of actual discretion[.]"  *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).  Instead, "we assess whether [the acts] are of a type that fell within the employee's job responsibilities."  *Id.*  This contrasts with "many areas other than qualified immunity," in which "a 'discretionary function' is defined as an activity requiring the exercise of independent judgment[] and is the opposite of a 'ministerial task.'"  *Id.*  Furthermore, "the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act.  Framed that way, the inquiry is no more than an untenable tautology."  *Id.* at 1266.

Defendant Stone was clearly acting within his discretionary authority when he moved Plaintiff within the jail.  He was further acting within his discretionary authority when he assisted officers in executing a search warrant for Plaintiff's DNA.  Since that determination is made, the burden shifts to Plaintiff to establish that qualified immunity does not apply to the Sheriff's Office Defendants or the Albany Police Defendants.

18

"To overcome an official's claim of qualified immunity, the plaintiff must show that: (1) the official violated a constitutional right; and (2) that right was clearly established at the time of the alleged violation." *Anderson*, 501 F. App'x at 916 (citation omitted).[8]   Plaintiff here alleges that the following constitutional violations have occurred:   (1) Fourth and Fourteenth Amendment claims for excessive force while obtaining Plaintiff's DNA; (3) Fourth and Fourteenth Amendment claims for failure to protect or intervene; (4) Fourteenth Amendment claims for deliberate indifference to his serious medical needs; and (5) due process claims for taking his DNA through excessive force.   The Court therefore must determine whether the Plaintiff has shown that Defendants' conduct violated a constitutional right and whether that right is clearly established.

"To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right."   *Reichle v. Howards*, -- U.S. --, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and citation omitted) (alteration in original).   "In other words, existing precedent must have placed the statutory or constitutional question beyond debate."   *Id.* (internal quotation marks and citation omitted).   The Eleventh Circuit has explained that

> [a] right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional

---

[8] Courts should use their discretion in determining which prong of the qualified immunity inquiry to address first. *McCullough*, 559 F.3d at 1205.

right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013).  Furthermore, "[t]he inquiry whether a federal right is clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (internal quotation marks and citation omitted).   "The relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable [state official] that his conduct was unlawful in the situation he confronted."  *Id.* (quotation marks and citation omitted) (emphasis and alteration in original).  The court should look "only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation."  *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted).

## 2.   *Fourth Amendment—Seizure of DNA*

Plaintiff contends that Defendants Charlie Roberts, Sergeant Hawkins, Investigator Dice, and Lt. LeFrancois, and Nurse W. Williams performed an "illegal search and seizure" when they took a DNA sample from Plaintiff without his consent. Am. Compl. 7-8.   He states that this violates the Fourth, Fifth, and Fourteenth Amendments.  *Id.*   As this Court previously held, "[t]he Fifth Amendment is not implicated by the collection of DNA swabs from a person's mouth because '[n]ot even a shadow of testimonial compulsion upon or enforced communication by the accused was

20

involved . . . in the extraction.'"   Order 13, Jan. 14, 2015, ECF No. 13 (quoting

*Schmerber v. California*, 384 U.S. 757, 765 (1966)) (alterations in original).   Plaintiff's

mistaken belief that he had a Fifth Amendment right to refuse to provide a DNA sample

does not make the collection of that sample "illegal."[9]

Plaintiff also generally claims that the search warrant was insufficient under the

Fourth Amendment.   *See* Pl.'s Opp'n to Sheriff's Office Defs.' MSJ 24-28.   His only

argument in support of this claim is that the warrant's supporting affidavit lacks probable

cause, *id.* at 25-26, because Plaintiff has "not been charged or accused of committing any

of the crimes in the warrant and affidavit."   Pl.'s Surreply to Sheriff's Office Defs.' MSJ

6, ECF No. 72.   He makes no other factual assertion to support his claim that the warrant

lacks probable cause.

"The Fourth Amendment protects '[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures[.]'"

*United States v. Cruse*, 343 F. App'x 462, 464 (11th Cir. 2009) (quoting U.S. Const.

amend. IV).   "A warrant, and its corresponding search, violates the Fourth Amendment if

it fails to specify the place [or person] to be searched and items to be seized; or if it is

issued by an official who is not neutral and detached; or if it is procured by a false

---

[9] Plaintiff conflates the issues of whether a search is illegal and whether an individual may be forced to incriminate himself.   While these issues certainly may be interrelated, one does not necessarily flow from the other.   The Fifth Amendment is not implicated here because "neither the furnishing of consent to collect DNA, nor the DNA evidence itself, is testimonial or communicative."   *Everett v. Sec'y, Fla. Dep't of Corr.*, 779 F.3d 1212, 1244 (11th Cir. 2015). An act, such as a compelled search, may be incriminating without falling within the privilege against self-incrimination.   *See Doe v. United States*, 487 U.S. 201, 210-11 (1988) (explaining that "a suspect may be compelled to furnish a blood sample; to provide a handwriting exemplar or a voice exemplar; to stand in a lineup; and to wear particular clothing[]" without implicating the Fifth Amendment).

statement made intentionally or recklessly; or if it is not supported by probable cause." *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1290 (11th Cir. 2001).   In evaluating whether a warrant is supported by probable cause, "great deference" is given to a magistrate's determination.  *United States v. Leon*, 468 U.S. 897, 914 (1984); *see also Messerschmidt v. Millender*, -- U.S. --, 132 S. Ct. 1235, 1245 (2012) ("Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner[.]").  Thus, "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination because it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment."  *Messerschmidt*, 132 S. Ct. at 1245.  "Probable cause to support a search warrant exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999).

Here, a magistrate issued the search warrant on October 10, 2014 after a finding of probable cause.  Search Warrant, Sheriff's Office Defs.' Ex. 1 at 2, ECF No. 49-3.  The magistrate based his finding of probable cause on an affidavit attached to the warrant and verbal testimony.   Aff. for Search Warrant, Sheriff's Office Defs.' Ex. 1 at 1. Specifically, Plaintiff is identified as a potential witness or participant of a shooting that occurred on August 26, 2014 at the Shackelford Shopping Plaza.  *Id.*  During the shooting, Plaintiff allegedly received a gunshot wound to his hand.  *Id.*  Plaintiff,

however, denied being at the Shackelford Shopping Plaza during the shooting and reported to the police that he received the gunshot wound to his right hand at another location. *Id.* The police sought Plaintiff's DNA to compare with "evidence samples collected from the scene of [the Shackelford Shopping Plaza]." Search Warrant, Sheriff's Office Defs.' Ex. 1 at 2.

These facts support a finding of probable cause to obtain Plaintiff's DNA. Furthermore, it cannot be said that "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt*, 132 S. Ct. at 1245. Thus, no Fourth Amendment violation has occurred and Defendants Charlie Roberts, Sergeant Hawkins, Investigator Dice, and Lt. LeFrancois are entitled to qualified immunity and summary judgment on these claims.

> 3.    *Fourth and Fourteenth Amendment—Excessive Force*

Plaintiff claims that the DNA search was unreasonable because Defendants Charlie Roberts, Sergeant Hawkins, Investigator Dice, Lt. LeFrancois, Nurse W. Williams, Officer Cross, Officer Owens, and Officer Handle used excessive force while obtaining his DNA. Defendants, except for Nurse W. Williams, claim that they are entitled to qualified immunity regarding the claims of excessive force.

The Fourth Amendment's right to be free from unreasonable searches and seizures includes the right to be free from excessive force during the course of a search. *See, e.g., Los Angeles Cty. v. Rettele*, 550 U.S. 609, 614 (2007) ("Unreasonable actions [in the course of a search] include the use of excessive force or restraints that cause unnecessary pain or are imposed for a prolonged and unnecessary period of time."); *Lee v. Ferraro*,

284 F.3d 1188, 1197 (11th Cir. 2002) ("The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."). Additionally, the Fourteenth Amendment prohibits the use of excessive force against pretrial detainees. *See, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause[.]"). "In order to determine whether the amount of force used by an . . . officer was proper, a court must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Lee*, 284 F.3d at 1197; *see also Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Thus, the Court evaluates pretrial detainee excessive force claims under an objective reasonableness standard. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473-74 (2015); *see also Mobley v. Palm Beach Cty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015) (explaining that the objective reasonableness standard "asks whether the force applied is objectively reasonable in light of the facts confronting the officer, a determination we make from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.").

When determining whether the use of force was reasonable, the Court considers:

the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 135 S. Ct. at 2473.  The court should also keep in mind that "[o]fficers facing disturbances 'are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.'"  *Kingsley*, 135 S. Ct. at 2474 (quoting *Graham*, 490 U.S. at 397).  Furthermore, "a court must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate."  *Id.*  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth [or Fourteenth] Amendment[s]."  *Graham*, 490 U.S. at 396.  Moreover, in executing a warrant, an officer has "the right to use some degree of physical coercion or threat thereof to effect it."  *Lee*, 284 F.3d at 1197; s*ee also, e.g., Rendelman v. Scott*, 378 F. App'x 309, 313 (4th Cir. 2010) ("[T]he State's right to obtain the DNA sample from designated inmates must necessarily carry with it the right to use a reasonable degree of force that is sufficient to ensure compliance.  Otherwise, the State's right can be rendered meaningless by an inmate who refuses to grant permission for the cheek swab."); *United States v. Bullock*, 71 F.3d 171, 176 & n.4 (5th Cir. 1995) (explaining that officers had right to use force to execute a blood sample warrant when plaintiff resisted and that plaintiff "had no right to resist execution of a search warrant[]"); *United States v. Johnson*, 462 F.2d 423, 427 (3d Cir. 1972) ("[A] person does not have the right to forcibly resist execution of a search warrant by a peace officer or a Government agent, even though that warrant may subsequently be held to be invalid.").

Plaintiff submitted an affidavit showing that the following occurring during the attempt to execute the search warrant:[10]  Plaintiff was told that there was a search warrant for his DNA and was asked to consent to the search.  Pl.'s Aff. ¶ 11, June 1, 2015, ECF No. 53-2.  He refused.  *Id.*  Plaintiff stood up from the restraint chair he was sitting in and jerked away from Defendant Roberts when he reached for Plaintiff's hand.  Pl.'s Aff. ¶¶ 12-13, June 1, 2015.  Defendant Roberts hit Plaintiff with his left elbow causing Plaintiff to "stumble back into the restraint chair."  *Id.* ¶ 13.  Defendant Dice grabbed Plaintiff's right hand.  *Id.* ¶ 14.  Defendant LeFrancois grabbed Plaintiff's leg shackles and leaned Plaintiff back.  *Id.* ¶ 15.  Defendant Roberts then "shov[ed]" Plaintiff's head into the restraint chair as Plaintiff resisted.  *Id.* ¶ 16.  Defendant Roberts hit Plaintiff again with his elbow and forced Plaintiff's head back into the chair.  *Id.*  At this point, another pretrial detainee and Plaintiff's co-defendant, Danny Wilkerson, came into the office and yelled at the officers.  *Id.* ¶ 17.

Defendant Hawkins placed his hands on Plaintiff's neck and "applied pressure in an attempt to force [Plaintiff] to open [his] mouth."  Pl.'s Aff. ¶ 18, June 1, 2015.  Nurse W. Williams then tried to swab Plaintiff's mouth while Plaintiff "was still trying to keep [his mouth] close[d]."  *Id.*  Nurse W. Williams made six different attempts to get swabs causing Plaintiff's "gums and lips to receive cuts and bleed."  *Id.* ¶ 18.  While this was occurring, Defendants LeFrancois, Roberts, and Dice continued to hold Plaintiff.  *Id.*

---

[10] Plaintiff filed several affidavits, some which contain internally inconsistent and conclusory statements and/or conclusions of law.  The Court cites to Plaintiff's first affidavit and declines to include purported factual statements which are inconsistent or conclusory from Plaintiff's subsequent affidavits.  *See, e.g.,* Pl.'s Aff. ¶¶ 16-17, 19, 21, July 16, 2015, ECF No. 76-2.

Plaintiff was released after the swabs were taken.  Pl.'s Aff. ¶ 19, June 1, 2015.
He stood and "stumbled by Defendant LeFrancois" who grabbed Plaintiff and "slammed
[him] to the ground causing [Plaintiff] to hit the right side of [Plaintiff's ] head on the
floor."   *Id.*   Defendant Roberts restrained Plaintiff on the floor with Defendant
LeFrancois and they directed Plaintiff to "cuff up."  *Id.* ¶ 20.  Plaintiff did not comply, so
Defendants Handley and Cross grabbed his arms and handcuffed him.  *Id.* ¶¶ 20-21.

Plaintiff was lifted off the ground by Defendant Owens.  *Id.* ¶ 22.  Plaintiff was
told to walk, but stopped.  *Id.* ¶ 22.  Defendant Owens then "bulldozed" Plaintiff and took
him to the ground.  *Id.* ¶ 22.  Plaintiff was then placed back in the restraint chair and
examined by Nurse Lynn Montgerard.  *Id.* ¶ 25.  Nurse Montgerard allowed Plaintiff to
leave without providing him with any treatment.  *Id.* ¶ 26.

Defendants disagree with some aspects of Plaintiff's account of the incident,
consistently stating that he was noncooperative, aggressive, and actively resisting the
attempts to obtain his DNA.  *See, e.g.,* Roberts Aff. ¶¶ 7-11, ECF No. 67; Hawkins Aff.
¶¶ 7-1, ECF No. 67; Dice Aff. ¶¶ 7-11, ECF No. 67; Griffin Aff.  ¶¶ 8-15, ECF No. 67;
Collier Aff. ¶¶ 9-20, ECF No. 49-5; Handley Aff. ¶¶ 5-13, ECF No. 49-6; LeFrancois
Aff. ¶¶ 12-21, ECF No. 49-7; Owens Aff. ¶¶ 14-22, ECF No. 49-8; Cross Aff. ¶¶ 5-14,
ECF No. 49-9.   Additionally, Defendants provide the following facts which do not
conflict with Plaintiff's affidavit:  Plaintiff was wearing a brace on his right hand and told
Defendant LeFrancois that he had a medical profile that prevented him from being
handcuffed.   LeFrancois Aff. ¶ 6; Stone Aff. ¶ 5, ECF No. 49-15.   It is standard
procedure for maximum security inmates like Plaintiff to be handcuffed when moved

27

within the jail.  LeFrancois Aff. ¶ 5.  Consequently, Defendant LeFrancois called medical to confirm that Plaintiff had a medical profile against handcuffing.  *Id.* ¶ 7.  Nurse Montgerard said that she would have to ask the physician's assistant, so Defendant LeFrancois allowed Plaintiff to be moved without handcuffs.  *Id.* ¶¶ 8-9.

A restraint chair had been requested for Plaintiff in order to execute the warrant because Plaintiff had previously refused to provide a DNA sample.  LeFrancois Aff. ¶¶ 10; Collier Aff. ¶ 5.  Plaintiff refused to cooperate with the Albany Police officers' attempts to obtain a DNA swab and stood up in the chair.  Collier Aff. ¶ 9, LeFrancois Aff. ¶ 12; Stone Aff. ¶¶ 11-12.  Plaintiff continued to refuse to cooperate with the execution of the warrant and bit on the swab when Nurse W. Williams attempted to get a sample.  LeFrancois Aff. ¶ 14.  This caused the swab to break, so Nurse W. Williams had to repeat the process.  *Id.*

While the Albany Police officers were attempting to obtain a DNA sample from Plaintiff, Plaintiff's co-defendant Danny Wilkerson pushed his way into the room where Plaintiff was located and attacked Defendant Stone.  Stone Aff. ¶¶ 14-20; Bryant Aff. ¶¶ 13-15, ECF No. 49-12.[11]  Defendant Bryant radioed for assistance and several officers responded including Defendants Lewis, Handley, Owens, Cross, Wilson, Hunt, Cruz, and Goree.  Bryant Aff. ¶¶ 12, 16.  Both Plaintiff and Wilkerson resisted attempts to handcuff

---

[11] Danny Wilkerson submitted an affidavit in support of Plaintiff's opposition to Defendants' motions for summary judgment.  Therein, Wilkerson admits that he pushed his way into the room where the Defendants were taking Plaintiff's DNA sample, that he and Defendant Stone "began to tussle[,]" and that Defendant Bryant tried to prevent him from going into the room.  Wilkerson Aff. ¶¶ 10-12, June 2, 2015, ECF No. 76-4.  These statements are consistent with Defendants' additional factual statements concerning the altercation between Wilkerson and several officers.

them and bring them back under control.  Owens Aff. ¶¶ 8-9, 14; Goree Aff. ¶ 5, ECF No. 49-14; Cross Aff. ¶¶ 4-5, ECF No. 49-9; Handley Aff. ¶ 4.  Defendants Owens, Handley, and Cross took Plaintiff to the ground, carried him to the hallway, and handcuffed him.  Handley Aff. ¶¶ 7-8; Owens Aff. ¶¶ 18-19; Cross Aff. ¶¶ 7-8.  The handcuffs fit over Plaintiff's right hand brace.  Goree Aff. ¶¶ 13-14.  Because Plaintiff refused to walk, the restraint chair was brought back.  Collier Aff. ¶ 15; LeFrancois Aff. ¶ 19.  Defendant Collier asked Plaintiff again if he would cooperate, and he said he would, so Collier instructed the other officers to let Plaintiff up.  Collier Aff. ¶ 17.  Plaintiff walked about halfway down the hall before again refusing to walk, so he was placed in the restraint chair.  Collier Aff. ¶ 18; Bryant Aff. ¶¶ 18-19.

Plaintiff complained that he had been injured.  Collier Aff. ¶ 19.  Nurse Montgerard was summonsed to examine Plaintiff.  *Id.*  Nurse Montgerard "did not observe any physical injuries, including but not limited to swelling, bleeding, cuts or bruises on the Plaintiff."  Lynn Montgerard Aff. ¶ 17, ECF No. 63-2.  She further "did not observe any signs of acute distress" when she examined him.  *Id.* ¶ 18.  Plaintiff's blood pressure and pulse were found to be within the normal range and Plaintiff was "awake, communicative, oriented to his surroundings and his speech was clear."  *Id.* ¶ 19.  Plaintiff told Nurse Montgerard that "his wrist, neck[,] and head were hurting."  Nurse Montgerard claims that Plaintiff refused to open his eyes for her so that she could further examine him, but he disputes this fact.  Lynn Montgerard Aff. ¶¶ 20-21; Pl.'s Aff. ¶ 26, June 1, 2015.  She then "directed the officers to take Plaintiff out of medical and to his cell because Plaintiff's medical condition was stable[.]"  Lynn Montgerard Aff. ¶ 21.

The uncontested facts stated above show that Plaintiff was not subjected to excessive force in the execution of the search warrant. Plaintiff admittedly refused to consent to the search and attempted to stand to leave. Defendant Roberts allegedly hit Plaintiff in the head causing Plaintiff to stumble back into the restraint chair. When Plaintiff resisted by lifting his arms, Defendant Dice secured Plaintiff's uncuffed hands and Defendant LeFrancois lifted Plaintiff's legs so that he was leaning back in the restraint chair. Defendant Roberts held Plaintiff's head to the chair and Defendant Hawkins placed his hands around Plaintiff's neck (it is unclear where) and squeezed in what Plaintiff characterizes as an attempt to get Plaintiff to open his mouth because Plaintiff was resisting. Defendant Nurse W. Williams then had to make several attempts to get a buccal swab because Plaintiff still refused to open his mouth and bit down on the swab. At most, Plaintiff's gums and lips were cut during this interaction.

Each of the factors from *Kingsley* weighs in favor of Defendants. *See Kingsley*, 135 S. Ct. at 2473. Defendants needed to use force because Plaintiff was refusing to consent to a search warrant and Defendants used a minimal amount of force. Defendant Roberts used the most force and likely did not need to strike Plaintiff on the forehead,[12] but Plaintiff states that the strike merely caused him to stumble back into the restraint chair. Plaintiff suffered little, if any, injury; the officers tempered the amount of force by merely restraining Plaintiff to allow for the buccal swab and then immediately releasing him; although Plaintiff denies resisting in his argument, his affidavit states that he refused

---

[12] Defendant Roberts does not admit that he struck Plaintiff on the head, but the Court takes this sworn-to statement by Plaintiff as being true while ruling on the motions for summary judgment.

to consent to the swab and then took multiple measures to resist providing the DNA sample; and the officers perceived Plaintiff to be a threat because he actively resisted and knew he would resist because Plaintiff previously refused to consent to the sample. Plaintiff was thus not subjected to excessive force during the execution of the search warrant.

After the DNA sample was taken, another series of force was used against Plaintiff.  Plaintiff states that the officers holding him down released him and he immediately stood up.  This was while Danny Wilkerson, another pretrial detainee, pushed himself into the room and began an altercation with Defendant Stone.  After Plaintiff stood up and "stumbled" by Defendant LeFrancois, he was taken to the ground. Plaintiff refused to submit to requests to be handcuffed so he was carried into the hall and multiple officers handcuffed him over his arm brace.  Plaintiff was then lifted into a standing position.  He claims that he could not walk because he was dizzy, Defendants claim Plaintiff refused to walk.  Regardless, Plaintiff did not comply with multiple requests to walk back to his cell so he was again taken to the ground.  He was then placed in the restraint chair, examined by Nurse Montgerard, and returned to his cell.  Plaintiff states that he suffered bruises and pain from this incident, but the affidavit by the examining nurse and medical records reveal no other potential injuries.

An evaluation of the *Kingsley* factors again shows that no excessive force was used against Plaintiff.  Plaintiff was twice taken to the floor and forced to wear handcuffs while another pretrial detainee was involved in an altercation with an officer in the same room.  Plaintiff then refused to comply with requests to be handcuffed and walk back to

31

his cell.  Defendants used a minor amount of force in a situation that required them to regain control of the jail; Plaintiff suffered minor injuries, if any; a limited amount of force was used on Plaintiff; the security problem at issue was severe; the Defendants reasonably perceived a threat given Plaintiff's continuous refusal to comply; and Plaintiff actively resisted.  Each of these factors favors Defendants and no excessive force was used.  Plaintiff consequently fails to establish a constitutional violation and Defendants Charlie Roberts, Sergeant Hawkins, Investigator Dice, Lt. LeFrancois, Officer Cross, Officer Owens, and Officer Handle are entitled to qualified immunity and summary judgment on the excessive force claims.[13]

### 4.    Fourth and Fourteenth Amendment—Failure to Intervene

Plaintiff also claims that Defendants Tyrone Griffin, Major Lewis, Captain Collier, Corporal Wilson, Corporal Hunt, Corporal Bryant, Deputy Cruz, Deputy Goree, and Officer Stone violated the Fourth and Fourteenth Amendments for failing to intervene to prevent the use of excessive force against him.  The uncontested facts show that the majority of these officers were not present for some portion of the execution of the search warrant.  Regardless, "an officer can be liable for failing to intervene when another officer uses excessive force."  *Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000).  As explained above, the force used against Plaintiff was not

---

[13] As explained previously, Nurse W. Williams failed to respond to Plaintiff's Amended Complaint.  The Court thus declines to grant summary judgment for her at this time, but does find that Plaintiff's injuries—bleeding gums and lip—are *de minimis*.  "[A]n incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury."  *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015).  Thus, Plaintiff can only recover nominal damages from Defendant W. Williams.

excessive.  Since there is no constitutional violation, those officers who were present for some use of force against Plaintiff cannot be held liable for failure to intervene. Summary judgment should be granted for these Defendants as to the failure to intervene claims.

### 5. *Deliberate Indifference*

Plaintiff also asserts that Nurse Montgerard, Nurse D. Williams, Corporal Hunt, and Officer Handley were deliberately indifferent to his serious medical needs after his DNA was taken.  Defendants Hunt and Handley contend that they are entitled to qualified immunity because Plaintiff fails to show that they were deliberately indifferent to his medical needs.  Similarly, Defendants Montgerard and D. Williams state that they are entitled to summary judgment because they were not deliberately indifferent to Plaintiff's medical needs.

The Fourteenth Amendment Due Process Clause prohibits deliberate indifference to a pretrial detainee's serious medical needs.[14]  *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).  "However, not every claim by a prisoner that he has not received adequate medical treatment states a [constitutional] violation[.]"  *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) (internal quotation marks and citation omitted).  "To prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  *Mann v. Taser*

---

[14] "[T]he standards under the Fourteenth Amendment are identical to those under the Eighth" for deliberate indifference claims.  *Goebert*, 510 F.3d at 1326.

*Int'l*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).  "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (internal quotation marks and citation omitted).

Deliberate indifference requires a showing of a "subjective knowledge of a risk of serious harm" and "disregard of that risk . . . by conduct that is more than mere negligence."  *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (citation omitted).  "Deliberate indifference can include the delay of treatment for obviously serious conditions where it is apparent that the delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified."  *Harper v. Lawrence Cty.*, 592 F.3d 1227, 1235 (11th Cir. 2010) (internal quotation marks and citations omitted).  "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."  *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

Plaintiff submitted multiple affidavits which state: Plaintiff was examined by Nurse Lynn Montgerard immediately after his DNA was taken.  Pl.'s Aff. ¶ 25, June 1, 2015.  Plaintiff told her that he had pain in the head, neck, back, ribs, chest, leg, "pelvis bone[,] and ankles."  *Id.*  Nurse Montgerard did not provide Plaintiff with any pain medication or treatment before allowing him to return to his cell.  *Id.* ¶ 26.  Additionally,

Nurse Montgerard did not request "that the officers release [Plaintiff] from the restraining [sic] chair so she could evaluate the extent of [Plaintiff's] injuries . . . so she was therefore unaware of the extent of [Plaintiff's] injuries[.]"  Pl.'s Aff. ¶ 8, Aug. 10, 2015, ECF No. 84-2.

When Plaintiff returned to his cell, he passed out and hit his head on the floor. Pl.'s Aff. ¶ 27, June 1, 2015.  Plaintiff states that "[b]ecause [he has] a head full of hair[,] knots or bruises below [his] hair [are] almost impossible to feel."  Pl.'s Aff. ¶ 14, Aug. 10, 2015.  Plaintiff asked another inmate to call for medical.  Pl.'s Aff. ¶ 27, June 1, 2015.  Officer Bell informed Defendant Hunt that Plaintiff wanted to be seen by medical, but she refused to call medical.  *Id.*  Officers Bell and Send called medical, but medical refused to see Plaintiff.  *Id.*  Officer Handley then entered the dorm and told the assigned dorm officers not to call medical for Plaintiff.  Pl.'s Aff. ¶ 28, June 1, 2015.

Plaintiff points to three pieces of evidence to support his contention that Defendants Hunt and Handley told other officers not to call medical—Pl.'s Exs. B5, E1, E2.  Exhibit B2 is a grievance response form filled out by Defendant Hunt that states that Defendant Hunt and Handley were aware that Plaintiff had previously been cleared by medical and that on October 19 they were unaware that Plaintiff was still hurting.  Pl.'s Ex. B5, ECF No. 53-4.  Exhibits E1 and E2 are log book entries.  In Exhibit E1, an officer writes that Plaintiff "allegedly falls and bumps head from passing out.  I advised Cpl Hunt about the incident and to call medical.  Cpl. Hunt advised me that [Plaintiff] has been seen by medical."  Pl.'s Ex. E1, ECF No. 53-5.  Similarly, in Exhibit E2, an officer

writes that Plaintiff was "complaining about being light headed and he was about to fallout.  Deputy Stone notified medical."  Pl.'s Ex. E2, ECF No. 53-5.

On October 18, 2014, Plaintiff informed Nurse D. Williams that he was "suffering from severe pain and that [he had] filed several sick request[s]."  *Id.* ¶ 29.  Plaintiff showed Nurse D. Williams the "many knots" on his forehead, but she told Plaintiff that she was going to say that "she didn't see anything."  *Id.*  On October 19, 2014, Plaintiff saw Nurse D. Williams again and told her that he was going to file a grievance against her.  She told Plaintiff that any swelling would go down by the time he was seen by someone else.  Pl.'s Aff. ¶ 30, June 1, 2015.  Plaintiff concludes that he "was force[d] to go several days without being seen by medical staff knowingly and allowed to continue to suffer pain from injuries sustained[.]"  *Id.* ¶ 31.  He further states that he "filed several inmate sick calls seeking medical attention that [he] was repeatedly denied and ignored altogether."  Pl.'s Aff. ¶ 28, Aug. 10, 2015.

He also states that he was not told in response to his sick call requests that he was given an appointment with the physician's assistant.  *Id.* ¶¶ 20-21.  When he saw the physician's assistant on October 21, 2014, the physician's assistant ordered x-rays of his right hand.  *Id.* ¶¶ 23, 26.  During that appointment, Plaintiff was suffering pain in his "right hand, head, neck and pelvis bone."  *Id.* ¶ 32.

Defendants add the following additional uncontested evidence: Nurse Montgerard examined Plaintiff after his DNA was taken.  Lynn Montgerard Aff. ¶ 15.  During the examination, Nurse Montgerard "did not observe any physical injuries, including but not limited to swelling, bleeding, cuts or bruises on the Plaintiff."  *Id.* ¶ 17.  She checked

Plaintiff's blood pressure and pulse and determined that they were both within normal range. *Id.* ¶19. Plaintiff was "awake, communicative, oriented to his surroundings, and his speech was clear." *Id.* She claims that she was unable to perform a pupil exam because Plaintiff would not cooperate. *Id.* ¶¶ 20-21. Nurse Montgerard "directed the officers to take Plaintiff out of medical and to his cell because Plaintiff's medical condition was stable[.]" *Id.* ¶ 22. The Use of Force Evaluation Form and Clinical Progress Notes contains information consistent with Nurse Montgerard's affidavit. Nurse Defs.' MSJ Ex. A, ECF No. 63-2.

Nurse Montgerard informed Defendant Hunt, the building supervisor, that Plaintiff had been cleared to return to his cell "without restrictions." Hunt Aff. ¶ 3, 8, ECF No. 49-11. Officer Handley likewise heard Nurse Montgerard medically clear Plaintiff to return to his cell. Handley Aff. ¶ 13. Defendant Hunt avers that she did not receive any reports from other officers that Plaintiff needed to return to medical and that she did not instruct anyone to refuse to take Plaintiff back to medical. Hunt Aff. ¶¶ 9-10. Defendant Handley similarly states that he did not direct any officers to not call medical if Plaintiff requested medical care. Handley Aff. ¶ 14. Plaintiff filed several sick call requests and each of these requests was evaluated, he was referred to medical, and treatment was rendered. Lynn Montgerard Aff. ¶ 25; Oder Aff. ¶¶ 7, 14, ECF No. 63-2.

Nurse D. Williams was not present at Dougherty County Jail on October 17, 2014. D. Williams Aff. ¶ 12, ECF No. 63-2. On October 18 and 19, Nurse D. Williams delivered medications to inmates, including Plaintiff, during her shift. *Id.* ¶ 14. Plaintiff told Nurse D. Williams on October 18 that he needed to see medical. She "observed the

areas of his body about which he complained[,]" but "did not note any physical deformities on the Plaintiff."  D. Williams Aff. ¶¶ 15-16.  She further perceived that Plaintiff "was not in acute distress" and that there were no visible "physical bruises, blood, cuts, bleeding, swelling, or other injuries to the Plaintiff."  *Id.* ¶ 16.  Nurse D. Williams then reported her observations to Nurse Montgerard and stated that Plaintiff wished to be seen in medical.  Nurse Montgerard told Nurse D. Williams that Plaintiff was scheduled to see a physician on October 21, 2014.  *Id.* ¶ 18.  Nurse D. Williams again physically observed Plaintiff on October 19 while delivering medications.  *Id.* ¶ 19. She similarly noted that Plaintiff had no "physical bruises, blood, cuts, bleeding, swelling, or other injuries[,]" and told Plaintiff that he was going to be seen by a physician on October 21.  *Id.* ¶¶ 20-21.

Plaintiff saw the physician's assistant, Will Oder, on October 21, 2014.  Oder Aff. ¶ 7-8.  Plaintiff "complained of right wrist and hand pain, right shoulder pain, headache, neck pain, back pain and right hip pain."  *Id.* ¶ 8.  He "was able to ambulate normally[,]" move "his head and neck normally[,]" his "vital signs were normal, and he was in no acute distress."  *Id.* ¶¶ 8-9.  Oder "noted no guarding of the movement when the Plaintiff entered the room, walked across the room, and sat on the examination table."  *Id.* ¶ 10. He further noted no swelling or knots on Plaintiff's head, no lesions or lacerations to Plaintiff's mouth, no "objective gross deformity" of Plaintiff's shoulder, and "mild swelling" to the right hand.  Oder Aff. ¶¶ 11-12.  Oder ordered x-rays of Plaintiff's right wrist and prescribed pain killers.  *Id.* ¶ 13.

Oder also avers that in his medical opinion, "Plaintiff's hand and neck injuries were not [] serious medical condition[s] mandating medical intervention" and that "Plaintiff's injuries did not present any threat or risk of serious harm to him." Oder Aff. ¶ 16. It is further his opinion that "Plaintiff's pain and other residual problems concerning his right hand related to the gunshot wound he sustained . . . and more likely than not will continue to manifest themselves in the foreseeable future." *Id.* ¶ 17.

The records submitted show that Plaintiff submitted six sick call requests between October 17, 2014 and October 19, 2014. Nurse Defs.' MSJ Ex. D, ECF No. 63-2. Each request shows that it was considered by a member of the medical staff and that Plaintiff was referred for an appointment on October 21. *Id.*

It is clear from the above that Plaintiff has failed to establish a constitutional violation. After the altercation on October 17, Plaintiff was evaluated by a nurse, discharged, and sent back to his cell. Plaintiff has failed to present any evidence to establish that he had a serious medical need or one that necessitated further treatment than what he received on October 17. *See, e.g., Bingham*, 654 F.3d at 1176 (defining "serious medical need"). Thereafter, he asked to be seen by a physician. An appointed was created for him for four days later—October 21.

Despite his pending appointment, Plaintiff repeatedly submitted sick calls, each which were evaluated. Defendants Hunt and Handley did not refer Plaintiff again to medical because he had been cleared by Nurse Montgerard, but neither Defendant Hunt nor Handley prevented Plaintiff from being seen by medical personnel or his sick call requests from being evaluated. *See, e.g., Townsend v. Jefferson Cty.*, 601 F.3d 1152,

1159 (11th Cir. 2010) (finding no deliberate indifference where officers relied on the opinion of a medical professional and plaintiff failed to present evidence that "her situation was so obviously dire that two lay deputies must have known that a medical professional had grossly misjudged [plaintiff's] condition").  Plaintiff was observed twice between October 17 and October 21 by Nurse D. Williams who saw no physical deformities on Plaintiff, including bruises, cuts, swelling, or scrapes.  Plaintiff was then seen on October 21 by a physician's assistant.  There is no evidence in the record that shows that a delay in Plaintiff receiving additional treatment between October 17 and October 21 exacerbated or worsened any medical condition.  *See Hill*, 40 F.3d at 1188 (explaining that inmate must provide evidence that delay in treatment worsened his medical condition).  Furthermore, there is no evidence that any of these Defendants had subjective knowledge of a serious risk of harm to Plaintiff and disregarded such risk.  *See, e.g., Brown,* 387 F.3d at 1351 (finding that deliberate indifference requires a showing of subjective knowledge of serious risk which is disregarded).  Plaintiff's disagreement with the treatment received does not create a constitutional violation.  *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 106-07 (1976) (explaining that a disagreement of matters of medical judgment does not give rise to a deliberate indifference claim).

Plaintiff has thus failed to show that Defendants Handley, Hunt, Montgerard, or D. Williams were deliberately indifferent to his medical needs in violation of the Fourteenth Amendment.  Defendants Handley and Hunt are entitled to qualified immunity on these claims and their motion for summary judgment should be granted.  Similarly, Defendants

Montgerard and D. Williams' motion for summary judgment should be granted because they are entitled to judgment as a matter of law.

### 6. Due Process

Finally, Plaintiff claims that Defendants Charlie Roberts, Sergeant Hawkins, Investigator Dice, Lt. LeFrancois, and Nurse Watisha Williams violated his Fourteenth Amendment due process rights by taking his DNA through excessive force. Plaintiff argues that Defendants were "prohibited by law from compelling a defendant in a criminal case to give any kind of evidence against himself against his own free-will" and that a warrant does not "justify the beating Plaintiff received for refusing to sign [the] consent form to give DNA." Pl.'s Resp. to Sheriff's Office Defs.' Suppl. Br. 2, ECF No. 77. He concludes that his due process claim should thus survive because he "was deprived of liberty before being afforded due process when he was subjected to the seizure." *Id.*

Plaintiff cannot maintain such an action under the Fourteenth Amendment. Claims that law enforcement officers used excessive force in the course of a seizure are analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Fourth Amendment also governs the process due for searches in criminal cases. *See, e.g., Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975) ("The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases[.]"). As explained in detail above, Plaintiff's Fifth Amendment rights to be free from self-incrimination are not implicated by taking his

DNA.  Furthermore, the warrant the Albany Police Defendants obtained was supported by probable cause and Plaintiff's Fourth Amendment rights were not violated.  Finally, Plaintiff was not subject to excessive force in the execution of the DNA search warrant.  Plaintiff does not state a claim for relief under the Fourteenth Amendment Due Process Clause and Defendants Charlie Roberts, Sergeant Hawkins, Investigator Dice, and Lt. LeFrancois are entitled to summary judgment.

### 7.   State Law Claims

Plaintiff also asserts state law claims for gross negligence, assault and battery, and intentional infliction of emotional distress against Defendants Owens, Cross, Handley, Roberts, Hawkins, Dice, and LeFrancois, and gross negligence against Defendants Griffin, Collier, Lewis, Wilson, Hunt, Bryant, Cruz, Goree, and Stone.  Am. Compl. 8.  Defendants are likewise entitled to summary judgment on these claims.

"To state a cause of action for negligence in Georgia, it is necessary to establish the essential elements of duty, breach of that duty, and proximate causation, as well as damages[.]"  *Robertson v. MARTA*, 199 Ga. App. 681, 681 (1991).  "[G]ross negligence is the absence of even slight diligence . . . [which is] that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances."  *Pottinger v. Smith*, 293 Ga. App. 626, 628 (2008).  The Sheriff's Office Defendants admit that they had a duty to use reasonable force against Plaintiff and to provide him with adequate medical care.  However, as explained above, no excessive force was used against Plaintiff and the evidence shows that he received adequate medical care.  The Sheriff's Office Defendants are thus entitled to summary judgment on

Plaintiff's claims for gross negligence.   For the same reasons, the Albany Police Defendants are entitled to summary judgment on these claims.

An assault is "any violent injury or illegal attempt to commit a physical injury upon a person[.]"  *Wallace v. Stringer*, 250 Ga. App. 850, 853 (2001); O.C.G.A. § 51-1-14.  "To constitute an assault no actual injury need be shown, it being only necessary to show an intention to commit an injury, coupled with an apparent ability to do so."  *Wallace*, 250 Ga. App. at 853.  A battery is "[a] physical injury done to another . . . whatever may be the intention of the person causing the injury, unless he is justified under some rule of law."  O.C.G.A. § 51-1-13.  Plaintiff has failed to establish an assault and battery by either the Sheriff's Office Defendants or the Albany Police Defendants.  There is no evidence in the record of intent by the Defendants to commit an injury or threats to do so.   Furthermore, Defendants were lawfully touching Plaintiff when they executed a search warrant and restrained him to maintain the security of the jail.  Plaintiff's self-serving and conclusory statements that Defendants bore him some ill-will are not sufficient to survive a motion for summary judgment showing that Defendants touched Plaintiff only to execute a valid search warrant and to maintain order.  Defendants are thus entitled to summary judgment on Plaintiff's state law assault and battery claim.

Finally, Plaintiff claims that Defendants are liable for the intentional infliction of emotional distress.   Intentional infliction of emotional distress requires a showing that:  "(1) the conduct at issue was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the

emotional distress; and (4) the resulting emotional distress was severe." *Coon v. Medical Center, Inc.*, -- Ga. App. --, 780 S.E.2d 118, 124 (Ga. App. 2015). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." *Id.* "Liability [can be] found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

Plaintiff has been subjected to no conduct which rises to this level of outrageousness or egregiousness. Defendants required Plaintiff to submit to a lawful search warrant by use of a reasonable degree of force. Plaintiff was also thereafter subdued in an attempt to maintain control and security of the jail. He was then immediately examined by a medical professional and again observed by a medical professional over the following two days. Plaintiff suffered no initially apparent injuries from the interaction with Defendants and was treated by a physician's assistant four days after the altercation who found no evidence of injuries therefrom. Defendants are consequently entitled to judgment as a matter of law on Plaintiff's state law claims and their motions for summary judgment should be granted.

## CONCLUSION

For the reasons explained above, Plaintiff's motions to strike (ECF Nos. 52, 90) are denied, his motions to supplement (ECF No. 78, 79) are granted except for his most recently filed motion to supplement (ECF No. 101), his motion to dismiss (ECF No. 61) is terminated and Defendant Christian is dismissed, and his third motion for default (ECF

Nos. 88, 96, 97) is granted and the clerk is directed to issue an entry of default against Watisha Williams. It is recommended that Defendants' motions for summary judgment (ECF Nos. 49, 63, 67, 98) be granted and that the Fourth Amendment illegal search and seizure and Fourteenth Amendment due process claims against Defendant W. Williams be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error. The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED and RECOMMENDED, this 26th day of February, 2016.

S/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE